IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONALD BERNARD JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| MATTHEW ANTKOWIAK, | § | |
| JASON BROWER, MATTHEW | § | |
| PARSONS, ERNESTO VELA, | § | |
| JOHN DOE NO. 1, | § | |
| JOHN/JANE DOES NOS. 2-5, and | § | |
| CITY OF DALLAS, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Ronald Bernard Jones files this Original Complaint and in support respectfully shows the Court as follows:

### I.  PARTIES

1.      Plaintiff Ronald Jones (hereinafter "Jones" or "Plaintiff") is an individual residing in Dallas, Texas.

2.      Defendant Matthew Antkowiak (hereinafter "Antkowiak") was at all times relevant to this Complaint a police officer for the Dallas Police Department ("DPD"), employed by the City of Dallas.  Antkowiak was, at all times, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Texas and/or the City of Dallas, Texas.  Defendant Antkowiak may be served with

service of process at his place of business located at 1400 South Lamar Street, Dallas, Texas 75215. Defendant Antkowiak is sued in his individual capacity.

3.       Defendant Jason Brower (hereinafter "Brower") was at all times relevant to this Complaint a police officer for the Dallas Police Department ("DPD"), employed by the City of Dallas. Brower was, at all times, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Texas and/or the City of Dallas, Texas. Defendant Brower may be served with service of process at his place of business located at 1400 South Lamar Street, Dallas, Texas 75215. Defendant Brower is sued in his individual capacity.

4.       Defendant Matthew Parsons (hereinafter "Parsons") was at all times relevant to this Complaint a police officer for the Dallas Police Department ("DPD"), employed by the City of Dallas. Parsons was, at all times, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Texas and/or the City of Dallas, Texas. Defendant Parsons may be served with service of process at his place of business located at 1400 South Lamar Street, Dallas, Texas 75215. Defendant Parsons is sued in his individual capacity.

5.       Defendant Ernesto Vela (hereinafter "Vela") was at all times relevant to this Complaint a police officer for the Dallas Police Department ("DPD"), employed by the City of Dallas. Vela was, at all times, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Texas and/or the City of Dallas, Texas. Defendant Vela may be served with service of process at his place

of business located at 1400 South Lamar Street, Dallas, Texas 75215. Defendant Vela is sued in his individual capacity.

6.      Defendant John Doe No. 1 (hereinafter "Doe No. 1") was at all times relevant to this Complaint a police officer for the Dallas Police Department ("DPD"), employed by the City of Dallas who took part in the events that form the basis of this lawsuit. Once Plaintiff has had the opportunity to conduct discovery to learn the officer's identity, Plaintiff will seek leave to amend his Complaint to name the officer and then effectuate service. Defendant Doe No. 1 is sued in his individual capacity.

7.      Defendants John/Jane Does Nos. 2-5 (hereinafter "Does No. 2-5") were at all times relevant to this Complaint supervisory police officers for the Dallas Police Department ("DPD"), employed by the City of Dallas. Once Plaintiff has had the opportunity to conduct discovery to learn the officers' identities, Plaintiff will seek leave to amend his Complaint to name the officers and then effectuate service. Defendants Does No. 2-5 are sued in their individual capacities.

8.      Defendant City of Dallas ("the City") is a municipal corporation and political subdivision of the State of Texas. The City may be served with process by serving its Acting City Secretary, Rosa Rios, Dallas City Hall, 1500 Marilla, Room 5D South, Dallas, Texas, 75201.

## II.  JURISDICTION

9.      The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C § 1331, as this lawsuit arises under the Constitution, laws, or treaties of the United States.

Additionally, the Court has supplemental jurisdiction of Plaintiff's state law claim under 28 U.S.C. § 1367(a).

## III.  VENUE

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## IV.  INTRODUCTION

11.     This is an action for money damages brought pursuant to 42 U.S.C. § 1983 for the violations of civil rights and privileges guaranteed Plaintiff by the United States Constitution and under the common law of the State of Texas.

## V.  FACTS

12.     During an encounter in December 2009, Defendants Antkowiak, Brower, and Parsons used force upon Plaintiff that was completely unwarranted and unnecessary.  In an effort to cover up their use of excessive force, Defendants Brower and Antkowiak then falsely arrested Plaintiff and caused him to be maliciously prosecuted.  Defendant Vela and Defendants Does 1-5 were complicit in that each allowed or contributed to the violation of Plaintiff's civil rights by their actions or lack thereof.

13.     On December 18, 2009, the Dallas Police Department's dispatch unit requested assistance in locating two white males who were reportedly in the area where Defendant Antkowiak and Defendant Brower were patrolling.  The dispatcher indicated that the two white males were causing a disturbance by running into the street and over nearby train tracks.

14.     At approximately the same time as Defendants Antkowiak and Brower were receiving the call from dispatch, Plaintiff, a black male in his early sixties, was crossing Reunion Boulevard in downtown Dallas.  He was alone.

15.     Despite the fact that Plaintiff did not remotely match the description of the men referenced by dispatch, Defendant Antkowiak ordered Plaintiff to stop.  Defendant Antkowiak has claimed that he took this action because he believed Plaintiff was one of the suspects described by dispatch as being involved in the disturbance.

16.     Defendant Antkowiak ordered Plaintiff to put his hands on the hood of the patrol car. Plaintiff willingly complied; his compliance is plainly evident on the video recording captured by the dashboard camera of Defendant Antkowiak's patrol car.  As Plaintiff stood with his hands on the hood of the patrol car, Defendant Antkowiak suddenly grabbed Plaintiff and threw him on top of the patrol car.  Defendant Antkowiak then pulled Plaintiff to the ground and began physically assaulting Plaintiff.  He struck Plaintiff repeatedly in the face and neck with his fists, without justification or provocation.

17.     Defendant Brower was the second DPD officer to arrive and he immediately began striking and punching Plaintiff.  The force used by both Defendant Antkowiak and Defendant Brower was completely unjustified, and unwarranted.

18.     Because of an "officer down" call made by either Defendant Antkowiak or Defendant Brower, multiple patrol cars rushed to the scene.  Defendants Parsons, Vela and Does 1-5 were among those officers who arrived.  It is believed that Defendant Parsons also struck Plaintiff without justification.  Defendants Antkowiak, Brower and Parsons struck Plaintiff with their hands, feet, and knees and sprayed him with pepper spray.

19.     A review of video recordings from multiple patrol cars proves that the above-described force used against Plaintiff was entirely unwarranted and unjustified.  Plaintiff remained subdued, face-down on the pavement, throughout the assault.  Plaintiff was not aggressive toward any officer nor did Plaintiff make any gesture or take any action that necessitated Defendants' use of force against him.  Eventually, Plaintiff was handcuffed and placed in a seated position on the ground near the front of Defendant Antkowiak's patrol car.

20.     Soon after Plaintiff was handcuffed, Defendant Doe No. 1 instructed Defendant Vela to turn off the dashboard camera in the squad car that had a direct, unobstructed view of Plaintiff handcuffed on the ground near the front of Defendant Antkowiak's patrol car.  Defendant Doe No. 1's command is audible on one of the video recordings from the incident.  Soon after Defendant Doe No. 1's command, Officer Vela approached the patrol car, and reached inside, at which point the video from that car immediately ceased.

21.     Shortly after Officer Vela turned off the dashboard camera that had the direct, unobstructed view of Plaintiff, one of the Dallas Police officers claimed to find a crack pipe and cocaine under Defendant Antkowiak's patrol car.  Neither the crack pipe nor any cocaine that Defendants claim to have found belonged to Plaintiff.

22.     Subsequent to the above-described events, paramedics arrived and transported Plaintiff to the hospital.  Medical records reflecting treatment of Plaintiff indicate that he was not under the influence of any drugs or alcohol.

23.     In an effort to cover up their own illegal conduct, Defendants Antkowiak, Brower and Parsons caused Plaintiff to be arrested and charged with Aggravated Assault on a Public Servant, a felony offense under the Texas Penal Code.  Defendants Brower and Parsons are identified in the Arrest Report as arresting officers, and Defendant Antkowiak is listed as the "complainant."

24.     Despite a lack of probable cause, and in an effort to cover up their own illegal actions, Defendants Antkowiak, Parsons, Brower, Vela, and Defendant John Doe No. 1 caused Plaintiff to be arrested and charged with Possession of a Controlled Substance, a felony offense under the Texas Penal Code.  At no point did Plaintiff possess either the crack pipe or the cocaine that Defendants claim to have found on the ground near Plaintiff. As described earlier, it was not until the video with the unobstructed view of Plaintiff was turned off that the arresting officers claimed to have found the illegal contraband.

25.     Defendant Brower completed the Affidavit for Arrest Warrant and the Arrest Report.  In both documents, Defendant Brower swore to facts that are inconsistent with the images captured on the various dash-cam video recordings.  Several of these false statements are described below.

26.     Defendant Brower stated that Plaintiff appeared to be a suspect described in the 911 dispatch call, that Plaintiff appeared intoxicated, and that Plaintiff was walking in the middle of the street throwing beer cans in the air.  Defendant Brower further stated that Plaintiff threw an open beer can at Defendant Antkowiak.  The video recording from Defendant Antkowiak's dashboard camera unequivocally shows that Plaintiff had no beer cans with him and that he threw nothing in the air or at Defendant Antkowiak.

27.    Defendant Brower also stated that Plaintiff hit, kicked, choked, and bit police officers. He further stated that Plaintiff got hold of Defendant Antkowiak's handcuffs, threw them away from Defendant Antkowiak, and stood up while Defendant Antkowiak clung to his back.  Again, video recordings disprove these statements.

28.    Defendant Brower stated that after he arrived on the scene, Plaintiff drew away from both himself and Defendant Antkowiak and pulled a long, shiny, metallic object from his pants – an improvised crack pipe and a small bag of cocaine.  Again, the video camera evidence proves this to be fictitious.

29.    During a Motion to Suppress hearing that took place on October 13, 2010, Defendant Antkowiak swore under oath to materials facts that were not true.  He knew the statements were false when made.  Specifically, Defendant Antkowiak swore to the facts set forth in the Affidavit for Arrest Warrant and in the Arrest Report.  As described above, these statements by Defendant Antkowiak were false.  The video evidence proves that Plaintiff did not throw a beer can at Defendant Antkowiak, was not belligerent toward Defendant Antkowiak, did not act aggressively toward Defendant Antkowiak, and did not assault Defendant Antkowiak.  As a direct result of Defendant Antkowiak's statements, the Motion to Suppress was denied and Plaintiff was forced to remain in jail.

30.    Plaintiff spent almost fifteen months in jail awaiting trial on the false charges. During this time, Plaintiff suffered terribly.  He woke up each morning in jail, believing that he faced a lengthy prison sentence – despite his innocence.  The cases against him were set for trial on several occasions, but for various reasons were continued.

31.     Throughout this ordeal, Plaintiff maintained his innocence.  At one point (not coincidentally, after all the video recordings came to light), Dallas County prosecutors offered to reduce the charges to misdemeanors and "time served."  Plaintiff refused the offer.  He was prepared to go to trial and prove his innocence even though he faced the prospect of decades in prison if he lost.  Finally, more than fifteen months after his arrest, all charges against Plaintiff were dismissed "in the interest of justice," and Plaintiff was freed.

## VI.  CAUSES OF ACTION UNDER 42 U.S.C. § 1983

### A.  Excessive Force

32.     Paragraphs 1-31 set forth above are incorporated herein by reference.

33.     The use of excessive force by Defendants Antkowiak, Brower and Parsons was an unreasonable physical seizure of Plaintiff under the Fourth Amendment of the United States Constitution.  Their use of excessive force was not objectively reasonable under the totality of the circumstances, and the force they used against Plaintiff was applied intentionally and maliciously to cause harm to him.  The force used was completely unwarranted and unjustified for all the reasons set forth above.

34.     As a direct result of Defendants Antkowiak's, Brower's and Parsons's illegal conduct, Plaintiff has suffered physical and mental/emotional injuries and was deprived of his constitutional rights, all to his damage.  The excessive force violated his rights guaranteed by the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983.

### B.  False Arrest

35.     Paragraphs 1 - 34 set forth above are incorporated herein by reference.

36.     Despite the total lack of probable cause to establish the existence of any crime, Defendants Antkowiak, Brower and Parsons falsely arrested Plaintiff on charges of Aggravated Assault on a Public Servant, and Possession of a Controlled Substance, both felony offenses.  The arrest of Plaintiff was malicious, intentional, and made with the express purpose of covering up the aforementioned illegal conduct by Defendants.  The false arrest of Plaintiff was an unreasonable seizure of Plaintiff, and violated his rights, as guaranteed by the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983.  The arrest was in the absence of probable cause.

37.     Additionally, the filing of felony criminal charges against Plaintiff, despite the lack of probable cause to establish the existence of the crimes for which Plaintiff was charged, is an absolute violation of Plaintiff's constitutional rights in violation of the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983.

38.     At all times relevant to this Complaint, Defendants Antkowiak, Brower and Parsons were police officers for the City of Dallas, and were acting under the direction and control of the City of Dallas.

39.     As a direct result of the illegal conduct of Defendants Antkowiak, Brower and Parsons, Plaintiff has suffered injury and damage as further described below.

## C.  Violation of Plaintiff's Due Process Rights

40.     Paragraphs 1 - 39 set forth above are incorporated herein by reference.

41.     As described in paragraph 29 above, Defendant Antkowiak's sworn testimony during the October 13, 2010 Motion to Suppress hearing was false.  Defendant knew the testimony was false when given.

42.     As a direct result of the false testimony, Plaintiff's due process rights guaranteed under the Fourteenth Amendment of the United States Constitution were violated.  Had Defendant Antkowiak not knowingly and intentionally testified falsely, the Motion to Suppress filed on behalf of Plaintiff would have been granted, and Plaintiff would have been freed from jail.  Instead, Plaintiff remained incarcerated for an additional six months.

### D.  Conspiracy to Deprive Plaintiff of His Constitutional Rights

43.     Paragraphs 1 – 42 set forth above are incorporated herein by reference.

44.     Defendants Antkowiak, Brower, Parsons, Vela, and Doe No. 1 entered into a conspiracy to deprive Plaintiff of his right to be free from false arrest by acting in concert either to orchestrate or to carry out the false arrest described in this Complaint when they knew there was no probable cause to arrest him.  Vested with the knowledge that they had lied about the factual basis for the arrest, no reasonable officer in these Defendants' positions would have believed that the circumstances provided probable cause to arrest Plaintiff for committing the offenses of Aggravated Assault on a Public Servant or Possession of a Controlled Substance, yet these Defendants conspired to arrest Plaintiff anyway.   These Defendants are liable to Plaintiff for their violations of the Fourth Amendment under 42 U.S.C. § 1983.

45.     Defendants Vela and John Doe No. 1 actively participated in the conspiracy to violate Plaintiff's constitutional rights when they obstructed justice and concealed evidence by causing an in-car video camera to be turned off, despite the fact that there was no justifiable reason to do so.  As previously described, the video camera in question had an

unobstructed view of Plaintiff, and it was not until after the camera was turned off that Defendants claim to have found the crack pipe and cocaine, neither of which were possessed by Plaintiff.

46.     The conspiracy involved state action, as Defendants Antkowiak, Brower, Parsons, Vela, and Doe No. 1 acted under color of the statutes, customs, ordinances, and usage of the State of Texas and the City of Dallas.

47.     As a direct result of Defendants Antkowiak's, Brower's, Parsons's, Vela's, and Doe No. 1's illegal conduct, Plaintiff has suffered physical and mental/emotional injuries, and he was deprived of his constitutional rights, all to his damage.

### E.  Failure to Supervise

48.     Paragraphs 1 - 47 set forth above are incorporated herein by reference.

49.     Defendants Does Nos. 2-5 are police officers who supervise Defendants Antkowiak, Brower, and Parsons.   Does Nos. 2-5 failed to supervise Defendants Antkowiak, Brower, and Parsons.  The failure by Does Nos. 2-5 to supervise Defendants Antkowiak, Brower, and Parsons caused the violation of the Plaintiff's rights through their use of excessive force and their false arrest of Plaintiff as described herein.  Moreover, the failure by Does Nos. 2-5 to supervise Defendants Antkowiak, Brower, and Parsons amounts to deliberate indifference.  Upon information and belief, Does Nos. 2-5 were aware that Defendants Antkowiak, Brower, and Parsons had numerous previous complaints of excessive force against them, yet failed to sufficiently supervise them to prevent their constitutional violations with respect to Plaintiff.  Thus, Does Nos. 2-5 were both aware of facts from which the inference could be drawn that a substantial risk of

serious harm existed to citizens like Plaintiff, and they also drew that inference.  Upon

information and belief, there was a pattern of constitutional violations of excessive force

and/or false arrest by Defendants Antkowiak, Brower, and Parsons, and the inadequacy of

the supervision of these officers by Does Nos. 2-5 was obvious and obviously likely to

result in a constitutional violation.

50.     At all times relevant to this Complaint, Does Nos. 2-5, as police officers for

the City of Dallas, were acting under the direction and control of the City of Dallas.

51.     As a direct result of Does Nos. 2-5's illegal conduct, Plaintiff has suffered

physical injuries, mental/emotional injuries, and economic damages.  He was deprived of his

constitutional rights, all to his damage.

## F.  Cause of Action against the City

52.     Paragraphs 1 – 51 set forth above are incorporated herein by reference.

53.     At the time of the events described above, the individual Defendants were

acting under color of the laws and regulations of the State of Texas and the DPD and in the

course and scope of their employment for the City.  As described below, the DPD had a

policy or custom of tolerating the use of excessive force by its police officers, as

demonstrated by the participation of a group of police officers in Plaintiff's beating; the

pattern of prior similar incidents of abusive police conduct; the inadequacy of

investigations into incidents of alleged excessive force; the lack of discipline for incidents

of excessive force; and the lack of supervision and reporting procedures to monitor the use

of force by police officers.

54.     A pattern of prior similar incidents of abusive police conduct plagues the DPD.  In the five years prior to Plaintiff's arrest, the City's records show approximately 1200 excessive force complaints were made against Dallas police officers – a staggering number that does not include any unreported incidents.

55.     Despite this number of complaints, the City tolerates an inadequate and failing system for responding to these allegations that allows Dallas police officers to escape investigation and discipline for their misconduct.  The City's police department tasks the DPD's Internal Affairs Division ("IAD") with investigating excessive force complaints made against Dallas police officers.  In essence, the IAD will *not* sustain an excessive force complaint unless (i) the accused officer actually admits to using excessive force; (ii) there is video evidence, such as that provided by a patrol car dash-cam or a surveillance camera, to prove that excessive force was used; or (iii) "independent" witnesses exist and are willing to come forward to support the complainant's version of the events.  Moreover, in practice, the IAD will not take the word of a complainant over the conflicting word of an officer to sustain a complaint.  As a result of these inadequate policies, it is no surprise that less than 2% of the excessive force complaints are "sustained" by IAD.

56.     Further, the rare Dallas police officer against whom the IAD sustained an excessive force complaint faced lenient discipline.  For example:

- In IAD investigation No. 08-308, a police officer was accused of pushing a handcuffed prisoner and causing him to fall and slide across the floor.  The prisoner cut his chin when he hit the floor.  The incident was caught on video and resulted in a sustained allegation for the use of inappropriate force.  The officer's sergeant and lieutenant recommended a

written reprimand, and the division commander recommended a two-day suspension.  The bureau commander decided that a letter of reprimand was the only discipline that should be imposed.

- In IAD investigation No. 09-236, a police officer grabbed a suspect by the handcuffs and pulled him to the pavement.  The incident was captured on video. The officer's sergeant recommended a 10-day suspension, and the lieutenant and division commander each recommended a 20-day suspension.  Assistant Police Chief Simpson decided to suspend the officer only five working days – from Tuesday, December 22, 2009 through Monday, December 28, 2009 – over the Christmas holiday.

- In IAD investigation No. 09-247, an officer struck a suspect four times even though the suspect was compliant. The incident was captured on video.  The discipline received by the officer was a "supervisor's report." A "supervisor's report" is a written form of discipline that is less formal than a written reprimand and is removed from an officer's résumé after 36 months.

- Also in IAD investigation No. 09-247, a second officer was captured on video kicking the suspect in the thigh twice and then jumping on the suspect's back. The officer received only a three-day suspension.

- Also in IAD investigation No. 09-247, a third officer was captured on video placing a foot on the suspect's face.  This officer received a two-day suspension.

- IAD Investigation No. 09-247 also involved an officer who was found to have interfered with the IAD investigation.  That officer sought the opinion of Sergeant Hinton – who teaches defensive tactics at the Dallas Police Academy – on possible explanations for the officers' use of force that was captured on video.  The interfering officer then forwarded Sergeant Hinton's notes to involved officers to use as a guide to explain their actions to investigators, although she instructed them to be sure to put the notes into their own words when writing their statements about the incident.  Despite this interference with the investigation, the only discipline the officer received for her actions was a written reprimand.

57.     During all relevant times, the Dallas City Council was the City's final

policymaker regarding the conduct of its police officers and had actual or constructive

knowledge of the unconstitutional policy of tolerating excessive force by Dallas police

officers. The City Council would have known of the unconstitutional policy had it properly exercised its responsibilities as policymaker.  Instead, the Council has taken a "head-in-the-sand" approach. For example, the Council has ignored statistics regarding excessive force complaints made against the Dallas Police Department.  The Council does not routinely receive the results of IAD investigations into allegations of excessive force by police officers, including sustained allegations.  The City Council does not help decide or provide guidelines as to how officers who are found to have used excessive force should be disciplined, and it does not hear appeals related to officer discipline.  Instead, the Dallas City Council simply accepts the course set by the DPD's employees.  The Council can thus be held responsible for that same course of action.

58.    Additionally, the constitutional violations in this case were the direct result of the policy described above wherein IAD only sustains an excessive force claim in which there is an independent eye witness or corroboration by a police officer or by video.  This policy has led directly to an atmosphere within the department in which certain police officers believe they can use excessive force without consequence to punishment or discipline.

59.    The City's policy of tolerating its police officers' use of excessive force was the "moving force" behind the violation of Plaintiff's constitutional rights. Defendants Antkowiak, Parsons, Brower, and Doe No. 1 treated Plaintiff with excessive force because they feared no adverse consequences to themselves as a result of this reprehensible conduct.  These Defendants did not expect that the IAD, applying its inadequate investigation policies, would sustain an excessive force complaint against them.

While these Defendants beat the Plaintiff, they did not believe that any independent witness was present. They had no fear of facing any significant discipline for their misconduct.

60.     At the time of the incident, Defendants Antkowiak, Parsons, Brower, and Doe No. 1 were acting pursuant to a custom, policy, practice and/or procedure of the DPD. Defendants Antkowiak's, Parsons's, Brower's, and Doe No. 1's actions constitute a violation of 42 U.S.C. § 1983 and of Plaintiff's clearly established and well-settled right to be free from excessive, unreasonable and unnecessary force under the Fourth Amendment.

61.     Before December 18, 2009, the City developed and maintained a policy or custom that was the moving force behind the constitutional and civil right violations and the injuries suffered by Plaintiff in violation of 42 U.S.C. § 1983. Specifically, the DPD had a policy or custom of tolerating the use of excessive force by its police officers, as demonstrated by the participation of a group of police officers in Plaintiff's beating; the pattern of prior similar incidents of abusive police conduct described above; the inadequacy of investigations into incidents of alleged excessive force described above; the lack of discipline for incidents of excessive force described above; and the lack of supervision and reporting procedures to monitor the use of force by police officers.

62.     Moreover, as policymaker, the City Council was deliberately indifferent to the known and obvious risk that the policy or custom described herein of tolerating the use of excessive force by DPD police officers would lead to the deprivation of its citizens' (like Plaintiff) Fourth Amendment right to be free from the use of excessive force.

63.     As a direct result of these acts, Plaintiff has suffered physical injuries, mental/emotional injuries, and economic damages.  He was deprived of his constitutional rights, all to his damage.

## VII.  STATE LAW CAUSE OF ACTION FOR MALICIOUS PROSECUTION

64.     Paragraphs 1 – 63 set forth above are incorporated herein by reference.

65.     As set forth above, a criminal prosecution was commenced against Plaintiff, and Defendants Antkowiak, Brower and Parsons initiated or procured the prosecution. The prosecution was terminated in Plaintiff's favor when the charges against him were dropped "in the interest of justice."

66.     Defendants Antkowiak, Brower, Parsons did not have probable cause to initiate or to procure the prosecution of Plaintiff, and they acted with malice.

67.     As a direct result of Defendants Antkowiak's, Brower's, and Parsons's illegal conduct, Plaintiff has suffered physical and mental/emotional injuries, including harm to his reputation, emotional distress, and the cost of his criminal defense.  He was deprived of his constitutional rights, all to his damage.  Plaintiff's injuries resulted from these Defendants' malice, which entitles Plaintiff to exemplary damages under Texas Civil Practices & Remedies Code § 41.003.

## VIII. DAMAGES

68.     As a direct and proximate result of the acts and omissions outlined above, Plaintiff has been severely damaged.  Defendants' conduct has caused physical pain and injury to Plaintiff.  He has also suffered economic loss, as well as emotional and mental

anguish and trauma and damage to his reputation.  All of these damages he suffered in the past and will continue to suffer in the future.

69.     Plaintiff seeks compensatory damages in an amount deemed sufficient by the trier of fact to compensate him for his damages, which includes physical pain and injuries, both past and future, mental anguish, pain and suffering, disfigurement, loss of income, and medical expenses.

70.     Plaintiff also seeks damages for the costs he incurred in having to defend against the false criminal charges filed against him, including money he paid for legal representation.

71.     Plaintiff also seeks exemplary damages against Defendants Antkowiak, Brower, Parsons, Vela, and Doe No. 1.

72.     Plaintiff has retained the services of the undersigned attorney, and claims entitlement to an award of reasonable and necessary attorney's fees under 42 U.S.C. §§ 1983 and 1988.

## IX. JURY DEMAND

73.     Plaintiff respectfully requests trial by jury.

## X.  PRAYER

For these reasons, Plaintiff seeks a judgment against Defendants for:

    a.     compensatory and actual damages in an amount deemed sufficient by the trier of fact;

    b.     exemplary damages;

    c.     attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988;

    d.      costs of court; and

    e.      interest allowed by law for prejudgment or post-judgment interest.

          Respectfully submitted,


By:  */s/ Don Tittle*
       Don Tittle
       State Bar No. 20080200
       dontittle@earthlink.net

LAW OFFICES OF DON TITTLE, PLLC
6301 Gaston Avenue, Suite 440
Dallas, Texas  75214
(214) 522-8400
(214) 389-1002 – Fax

*ATTORNEY FOR PLAINTIFF*
*RONALD JONES*